UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| L.A. PUBLIC INSURANCE ADJUSTERS, INC., § § § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-CV-00950 |
| § | |
| TIMOTHY JOHN NELSON, § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Nelson worked briefly as an insurance adjuster for Defendant ("LAPIA"). LAPIA fired Nelson after just 79 days. Upon leaving LAPIA, Nelson allegedly made disparaging comments about the company, prompting LAPIA to sue him in state court. Nelson removed the action and counterclaimed for breach of contract, seeking unpaid commissions. LAPIA did not timely answer Nelson's countercomplaint, prompting Nelson to move for partial summary judgment on liability. The court[1] denied Nelson's motion and instead granted summary judgment in LAPIA's favor. Nelson appealed, and the Fifth Circuit reversed, holding that LAPIA admitted all allegations unrelated to damages in Nelson's countercomplaint by failing to answer timely. The court thus erred in denying Nelson's request for summary judgment on liability. Nelson now moves for final summary judgment on damages, seeking $158,321.95 in unpaid commissions.

---

[1] Judge Lynn Hughes then presiding.

Before the Court are Nelson's Counter-Motion for Partial Summary Judgment, (Dkt. No. 52), and Motion for Final Summary Judgment, (Dkt. No. 116). For the reasons below, the Court **GRANTS** both Motions.

I.   BACKGROUND[2]

In November 2017, Timothy Nelson began working as an adjuster for LAPIA. (Dkt. No. 11-1 at 1). LAPIA fired Nelson less than three months later, after a dispute arose over the amount of commissions Nelson was due. (Dkt. No. 116 at 1).

LAPIA then sued Nelson in state court for allegedly making disparaging comments about the company. (Dkt. No. 1-1). Nelson filed an answer in state court, (Dkt. No. 1-3), and removed the case to federal court the same day, (Dkt. No. 1). In his state-court answer, Nelson asserted counterclaims against LAPIA. (Dkt. No. 1-3 at 2–6).

After removal, LAPIA did not timely answer Nelson's counterclaims. (*See* Dkt. No. 56 at 29–30). Instead, without first attempting to file a belated answer, LAPIA moved for partial summary judgment on Nelson's counterclaim. (Dkt. No. 51). Nelson responded and cross-moved for partial summary judgment on liability. (Dkt. No. 52). Nelson argued that LAPIA had not filed a timely answer denying the allegations in his countercomplaint, thus admitting all allegations except those relating to damages. (*Id.* at 2). Nelson argued that the allegations in his countercomplaint established LAPIA's liability for breach of contract. (*Id.*).

---

[2]   Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

LAPIA replied that Nelson had originally filed his counterclaims in Texas state court, and under Texas procedural rules, LAPIA was deemed to have generally denied all of Nelson's allegations without filing an answer. (Dkt. No. 54 at 3–4). On that basis, LAPIA argued—incorrectly[3]—that it did not need to answer Nelson's counterclaims in federal court. (*Id.*) (citing Fed. R. Civ. P. 81(c)).

While these cross-motions for summary judgment were pending, LAPIA obtained new counsel and, realizing its mistake, moved for leave to answer Nelson's counterclaims—22 months after the counterclaims were filed and six months after Nelson had moved for summary judgment based on LAPIA's failure to answer. (Dkt. No. 61). LAPIA moved for relief under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, which permits an extension if a deadline was not met because of "excusable neglect." (*Id.* at 2–3) (citing Fed. R. Civ. P. 6(b)(1)). LAPIA's late answer also introduced a new defense: Nelson was not entitled to commissions because he had not completed a three-month probationary period. (Dkt. No. 61-1 at 4).

The court granted LAPIA's motion for leave to file an untimely answer, accepting the answer without further explanation. (Dkt. No. 65). LAPIA then filed a second summary-judgment motion, pressing its new theory that Nelson was not entitled to commissions because he was a probationary employee. (Dkt. No. 66 at 6–7). The court denied Nelson's partial-summary-judgment motion and granted summary judgment for

---

[3] As LAPIA has conceded, (*see* Dkt. No. 61 at 2), this argument is incorrect. *See* Fed. R. Civ. P. 81(c)(2) ("A defendant who did not answer before removal *must* answer or present other defenses or objections under these rules . . . ." (emphasis added)).

3

LAPIA, accepting LAPIA's probationary-period argument. (Dkt. No. 80). Nelson timely appealed. (Dkt. No. 84).

The Fifth Circuit reversed, holding that the court "erred by granting LAPIA's summary judgment motion and denying Nelson's motion for partial summary judgment." *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 527 (5th Cir. 2021). The Fifth Circuit held that the court abused its discretion by granting LAPIA leave to file an untimely answer. *Id.* at 525–27. And "[i]n the absence of an answer denying the allegations in Nelson's counter-complaint," the Fifth Circuit continued, LAPIA "must be deemed to have admitted those allegations that are unrelated to damages." *Id.* at 527. Therefore, the Fifth Circuit reversed the court's denial of Nelson's partial-summary-judgment motion on liability for breach of contract and remanded the case for further proceedings. *Id.* at 527–28.

On remand, Nelson moved for final summary judgment on the amount of damages. (Dkt. No. 116). Nelson argued that there is no genuine dispute about the amount of his contract damages because LAPIA had admitted through discovery responses that Nelson worked on certain claims, and the client's records showed the gross settlement amounts for those claims. (*Id.* at 3–6). Based on LAPIA's admission that it owed Nelson a 2% commission on gross settlements, (*see* Dkt. No. 1-3 at 3), after deducting certain amounts, Nelson calculated his damages as $158,321.95, (Dkt. No. 116 at 6). Nelson supported his damages calculations with competent summary-judgment evidence. (Dkt. Nos. 116-1, 116-2, 116-3).

LAPIA then filed a response (of sorts). (Dkt. No. 117). LAPIA's counsel, speaking for himself, stated that he could "see no legitimate basis for disputing . . . Mr. Nelson's motion." (*Id.* at 1). But he couldn't "ethically endorse Defendant's motion as 'Unopposed'" because his client, LAPIA, "*does* dispute the amount of damages." (*Id.*) (emphasis in original). Even so, LAPIA's counsel could "find no basis in law or fact for dispute, no genuine issue of material fact" and felt that he could not "ethically or under the rules of professional conduct, argue otherwise." (*Id.*). Counsel reiterated, however, that LAPIA opposes Nelson's motion. (*Id.*).

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless

of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

A movant is not entitled to summary judgment just because the nonmovant fails to respond. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Still, "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F.App'x 214, 215 (5th Cir. 2015) (per curiam) (citing *Eversley*, 843 F.2d at 174). "The court need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Id.* Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S. Ct. at 2510 (emphases in original).

### III. DISCUSSION

#### A. DAMAGES

"In the absence of an answer denying the allegations in Nelson's counter-complaint, LAPIA must be deemed to have admitted those allegations that are unrelated to damages." *Nelson*, 17 F.4th at 527. Nelson alleged in his counter-complaint that (1) LAPIA agreed to pay him "a commission of 2% of the gross settlement amount LAPIA recovered on behalf of its clients for the claims Nelson worked on"; (2) Nelson worked on claims; and (3) LAPIA has "refused to pay Nelson any of his earned commissions." (Dkt. No. 1-3 at 3, 5). Nelson sought partial summary judgment for breach of contract based on the allegations in his countercomplaint, (Dkt. No. 52 at 2), which the court denied, (Dkt. No. 80).

On appeal, the Fifth Circuit held that—because LAPIA is deemed to have admitted the allegations in Nelson's complaint—the Court "erred by . . . denying Nelson's motion for partial summary judgment." *Nelson*, 17 F.4th at 527. The Fifth Circuit reversed "the district court's . . . denial of Nelson's motion for partial summary judgment" and remanded "this case for further proceedings consistent with this opinion."[4] *Id.* at 527–28.

The only issue left, then, is the amount of damages. And based on the terms of the agreement between Nelson and LAPIA, the only unresolved factual issues regarding damages are (1) the claims Nelson worked on and (2) the gross settlement amount of those claims. (*See* Dkt. No. 1-3 at 3, 5) (alleging that LAPIA agreed to pay Nelson "a commission of 2% of the gross settlement amount LAPIA recovered on behalf of its clients for the claims Nelson worked on").

As proof of the claims he worked on, Nelson offers LAPIA's response to his request for admissions. (Dkt. No. 116 at 3–4) (citing Dkt. Nos. 116-1, 116-2). In those responses, LAPIA admitted "that Nelson worked on each of the BNC Claims . . . identified in the Verification of Chris Carmona," (Dkt. No. 116-2 at 4), which included "BNC - Portofino," "BNC - Monitcello [*sic*]," and "BNC – Pecan," (Dkt. No. 116-1 at 12).

---

[4] Despite this, the Fifth Circuit did not render judgment in Nelson's favor or direct the Court to do so. *See Nelson*, 17 F.4th at 527–28. Even so, granting Nelson's motion for partial summary judgment on liability, (Dkt. No. 52), is the only disposition consistent with the Fifth Circuit's holding that the Court "erred by . . . denying" the motion and the Fifth Circuit's order of reversal in the decretal. *Nelson*, 17 F.4th at 527–28. For that reason, the Court **GRANTS** Nelson's Counter-Motion for Partial Summary Judgment. (Dkt. No. 52).

8

As proof of the gross settlement amount for these claims, Nelson offers the declaration of Susan Stubblefield, the former president of BNC Equities, LLC. (Dkt. No. 116-3). Stubblefield's declaration includes an "attached spreadsheet summarizing the payment details for all payments from BNC Equities to L.A. Public Insurance LAPIA in connection with the BNC Claims." (*Id.* at 1). Based on the figures in the spreadsheet, the total payment from BNC to LAPIA on the Portofino, Monticello, and Pecan claims totals $8,632,214.44. (*Id.* at 2) (summing all figures marked as "Deposit"). But Nelson disclaims any commission based on "payments for business interruption (labeled 'BI') on the Spreadsheet Summary." (Dkt. No. 116 at 5). With these payments excluded, the total is $8,341,323.10. (Dkt. No. 116-3 at 2). Two percent of $8,341,323.10 is $166,826.46. But Nelson further acknowledges that LAPIA made an $8,504.51 partial-commission payment on one of the claims. (Dkt. No. 116 at 5). Deducting that partial payment, Nelson claims that the total amount owed is $158,321.95. (*Id.* at 6).

In response, LAPIA's counsel stated that he could personally "see no legitimate basis for disputing . . . Mr. Nelson's motion." (Dkt. No. 117 at 1). Counsel then stated that LAPIA "*does* dispute the amount of damages." (*Id.*) (emphasis in original). So, while counsel could "offer no substantive, legitimate legal response," he reiterated that his "client is opposed" to Nelson's motion. (*Id.*).

Be that as it may, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphases in original). Nelson properly supports his motion for

9

summary judgment with competent evidence. LAPIA's "response," such as it is, does nothing to put Nelson's evidence in genuine dispute. LAPIA's failure to substantively respond to Nelson's summary-judgment motions leaves his facts undisputed. *See Flowers*, 614 F.App'x at 215. The undisputed facts show that Nelson is entitled to $158,321.95 in damages for breach of contract.

### B.    PRE- AND POST-JUDGMENT INTEREST

In addition to damages, Nelson seeks pre- and post-judgment interest. (Dkt. No. 118). "Pre-judgment interest is 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.'" *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (citation omitted). Because this is a diversity case in which the forum-state law applies, Texas law governs the award of pre-judgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011) (per curiam) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010)). Under Texas law, "[d]amages awarded for breach of contract bear pre-judgment interest." *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi 2001, no pet.). "[P]rejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *Kenneco Energy*, 962 S.W.2d at 531.

"The Texas Supreme Court has recognized two separate bases for the award of pre-judgment interest: (1) an enabling statute; and (2) general principles of equity." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (citing

*Kenneco Energy*, 962 S.W.2d at 528). "[S]tatutory pre-judgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *Id.* Because the claims here fall outside the statutory provisions, Texas common law governs the award of pre-judgment interest in this case. *Id.* at 499–500 (citing *Kenneco Energy*, 962 S.W.2d at 530). "Texas common law allows pre-judgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract." *Id.* (citing *Kenneco Energy*, 962 S.W.2d at 532).

The post-judgment interest rate in Texas is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation," unless that rate is less than five percent or more than 15 percent. Tex. Fin. Code § 304.003(c). The current prime rate is 7.5%. *See Selected Interest Rates (Daily) – H.15*, Bd. of Governors of the Fed. Rsrv. Sys., https://www.federalreserve.gov/releases/h15/ (Mar. 21, 2025). Accordingly, the Court awards Nelson pre-judgment interest on the damages recovered on his breach-of-contract claim, accrued as simple interest at the rate of 7.5% beginning on March 26, 2018, the date he filed his counterclaim against LAPIA. (Dkt. No. 1-3).

Federal law, however, governs the award of post-judgment interest. *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015). Under 28 U.S.C. § 1961, "[i]nterest *shall* be allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield." 28 U.S.C. § 1961(a) (emphasis added). Post-judgment interest "is awarded as a matter of course." *Meaux Surface Prot.*, 607 F.3d at 173 (citing 28 U.S.C. § 1961(a)). It is not discretionary. *Id.*; *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–57 (5th Cir. 2013). The current

11

post-judgment interest rate is 4.04%. *Post-Judgment Interest Rates*, U.S. Dist. & Bankr. Cts. of S. Dist. of Tex., https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2025 (last visited March 22, 2025).

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** Nelson's Counter-Motion for Partial Summary Judgment, (Dkt. No. 52), and Motion for Final Summary Judgment, (Dkt. No. 116). The Court **AWARDS** Nelson $158,321.95 in contractual damages, with pre-judgment interest at a rate of 7.5% accruing from March 26, 2018, until the date of this Order, and post-judgment interest at a rate of 4.04% until the judgment is satisfied.

It is SO ORDERED.

Signed on March 22, 2025.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**