United States District Court
Southern District of Texas
**ENTERED**
March 30, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **L.A. PUBLIC INSURANCE ADJUSTERS, INC.,** | § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § | **Civil Action No. 4:18-CV-00950** |
| **TIMOTHY JOHN NELSON,** | § § | |
| **Defendant.** | § § | |

### MEMORANDUM OPINION AND ORDER

Timothy Nelson worked briefly as an insurance adjuster for ("LAPIA"). LAPIA fired Nelson after just 79 days. Following his termination, LAPIA sued Nelson in state court for allegedly making disparaging remarks. Nelson removed the case to federal court and counterclaimed for breach of contract, seeking unpaid commissions. The Court ultimately granted summary judgment in favor of Nelson on all of LAPIA's claims as well as Nelson's breach of contract counterclaim. The Court entered a final judgment awarding Nelson $158,321.95 in contractual damages as well as pre- and post-judgment interest.

Pending before the Court is Nelson's Motion for Attorney's Fees and Costs. (Dkt. No. 123). For the following reasons, Nelson's Motion is **GRANTED**.

### I.    BACKGROUND

Nelson began working as an adjuster for LAPIA in November 2017. (Dkt. No. 11-1 at 1). LAPIA fired Nelson less than three months later, after a dispute arose over the amount of commissions Nelson was due. (Dkt. No. 116 at 1).

LAPIA then sued Nelson in state court for allegedly making disparaging comments about the company, misappropriating trade secrets, and interfering with existing contracts. (Dkt. No. 1-1). Nelson filed an answer in state court, (Dkt. No. 1-3), and removed the case to federal court the same day, (Dkt. No. 1). In his state-court answer, Nelson asserted counterclaims against LAPIA. (Dkt. No. 1-3 at 2–6).

After removal, LAPIA did not timely answer Nelson's counterclaims. (*See* Dkt. No. 56 at 29–30). Instead, without first attempting to file a belated answer, LAPIA moved for partial summary judgment on Nelson's counterclaim. (Dkt. No. 51). Nelson responded and cross-moved for partial summary judgment on liability. (Dkt. No. 52). While these cross-motions for summary judgment were pending, LAPIA obtained new counsel and, realizing its mistake, moved for leave to answer Nelson's counterclaims — nearly 22 months after the counterclaims were filed and six months after Nelson had moved for summary judgment based on LAPIA's failure to answer. (Dkt. No. 61). LAPIA's late answer also introduced a new defense: Nelson was not entitled to commissions because he had not completed a three-month probationary period. (Dkt. No. 61-1 at 3–4).

The Honorable Lynn Hughes, then presiding, granted LAPIA's motion for leave to file an untimely answer, accepting the answer without further explanation. (Dkt. No. 65). LAPIA then filed a second summary-judgment motion, pressing its new theory that Nelson was not entitled to commissions because he was a probationary employee. (Dkt. No. 66 at 6–7). The court denied Nelson's partial-summary-judgment motion and

granted summary judgment for LAPIA, accepting LAPIA's probationary-period argument. (Dkt. No. 80). Nelson timely appealed. (Dkt. No. 84).

The Fifth Circuit reversed, holding that the court "erred by granting LAPIA's summary judgment motion and denying Nelson's motion for partial summary judgment." *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 527 (5th Cir. 2021). The Fifth Circuit held that the court abused its discretion by granting LAPIA leave to file an untimely answer. *Id.* at 525–27. And "[i]n the absence of an answer denying the allegations in Nelson's counter-complaint," the Fifth Circuit continued, LAPIA "must be deemed to have admitted those allegations that are unrelated to damages." *Id.* at 527. Therefore, the Fifth Circuit reversed the court's denial of Nelson's partial-summary-judgment motion on liability for breach of contract and remanded the case for further proceedings. *Id.* at 527–28.

On remand, the case was reassigned to the undersigned, (Dkt. No. 95), and Nelson moved for summary judgment on the amount of damages, (Dkt. No. 116). Nelson argued that there is no genuine dispute about the amount of his contract damages because LAPIA admitted through discovery responses that Nelson worked on certain claims, and the client's records showed the gross-settlement amounts for those claims. (*Id.* at 3–6). Based on LAPIA's deemed admission that it owed Nelson a 2% commission on gross settlements, (*see* Dkt. No. 1-3 at 3), after deducting certain amounts, Nelson calculated his damages as $158,321.95, (Dkt. No. 116 at 6). Nelson supported his damages calculations with competent summary-judgment evidence. (Dkt. Nos. 116-1, 116-2, 116-3).

3

LAPIA then filed a response (of sorts).  (Dkt. No. 117).  LAPIA's counsel, speaking for himself, stated that he could "see no legitimate basis for disputing . . . Mr. Nelson's motion."   (*Id.* at 1).   But he couldn't "ethically endorse Defendant's motion as 'Unopposed'" because his client, LAPIA, "*does* dispute the amount of damages."   (*Id.*) (emphasis in original).  Even so, LAPIA's counsel could "find no basis in law or fact for dispute, no genuine issue of material fact" and felt that he could not "ethically or under the rules of professional conduct, argue otherwise."  (*Id.*).  Counsel reiterated, however, that LAPIA opposed Nelson's motion.  (*Id.*).

The Court ultimately granted Nelson's Counter Motion for Summary Judgment, (Dkt. No. 52), and Motion for Final Summary Judgment, (Dkt. No. 116), and awarded him $158,321.95 in contractual damages as well as pre- and post-judgment interest, (Dkt. No. 121).  Final judgment was entered on March 22, 2025.  (Dkt. No. 122).  Nelson timely filed a Motion for Attorney's Fees, (Dkt. No. 123), within 14 days after the entry of judgment, Fed. R. Civ. P. 54(d)(2)(B)(i).[1]

## II.   LEGAL STANDARD

"An award of attorney's fees is entrusted to the sound discretion of the trial court." *Tex. Commerce Bank Nat. Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). Under Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, the Court may award attorney's fees to a prevailing party if the party (1) files a motion within 14 days after

---

[1]   While Nelson's Motion was filed on April 7, 2025—16 days after entry of judgment—the two-week deadline fell on a Saturday which allowed Nelson to file on the following Monday.  *See* Fed. R. Civ. P. 6(1)(C).

entry of judgment, (2) specifies the judgment and legal basis for the fee award, (3) specifies the amount sought or a fair estimate of it, and (4) provides the terms of any fee agreement, if ordered by the Court.  Fed. R. Civ. P 54(d)(2)(B).

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002); *see also Transverse, LLC v. Iowa Wireless Servs., LLC*, 992 F.3d 336, 344 (5th Cir. 2021).  "Under Texas law, when a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees."[2]  *Mathis*, 302 F.3d at 462 (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)).  "Nevertheless it is the trial court that determines the reasonableness of attorney's fees by applying the factors listed in Rule 1.04 of the Texas Disciplinary Rule of Professional Conduct."  *Dallas Gas Partners, LP v. Prospect Energy Corp.*, No. 4:10-CV-01396, 2011 WL 644788, at *1 (S.D. Tex. Feb. 10, 2011).  These factors include: (1) time and labor required, (2) the preclusion of other employment by the attorney due to acceptance of the case, (3) fee customarily charged in the locality, (4) the amount involved and the results obtained, (5) any time limitations imposed by the circumstances, (6) the experience and

---

[2]    Texas law also requires a plaintiff or counter-plaintiff to "plead and prove that presentment of a contract claim was made to the opposing party and that the party failed to tender performance," *CapTran/Tanglewood LLC v. Thomas N. Thurlow & Assocs.*, No. 4:08-CV-02374, 2011 WL 2969835, at *2 (S.D. Tex. July 21, 2011) (citing *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983)), which Nelson did, (Dkt. No. 1-3 at 5); (Dkt. No. 123-1 at 6–8); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (stating that a claimant can recover fees only if they have presented the breach of contract claim to the opposing party and that party fails to tender payment within 30 days).

ability of the attorney, (7) the nature and length of attorney-client relationship, and (8) whether the fee is fixed or contingent.  Tex. Disciplinary R. Prof'l Conduct 1.04(b).

## III.   DISCUSSION

Nelson has satisfied the procedural requirements of Rule 54(d)(2)(B).  His motion is timely and his counsel's affidavit, (Dkt. No. 123-1), adequately describes the legal basis and amount of the fee award.  The Court must then determine whether Nelson's claimed fees are reasonable under Texas law.

To calculate the attorney's fees incurred throughout this case, Nelson used the lodestar method of multiplying the number of hours reasonably spent working on the case by a reasonable hourly rate.  (Dkt. No. 123 at 2); (Dkt. No. 123-1 at 1–5, 9–19).  Charles Sturm, Nelson's counsel, states in his affidavit that he and his legal assistant spent a total of 287.5 hours working on this case.  (Dkt. No. 123-1 at 2–3).  Not all of this time is recoverable, however, because some of it was spent on (1) claims other than breach of contract, (2) arguments and legal strategies that were unsuccessful, or (3) on the breach of contract claim before the expiration of the 30-day presentment period under Chapter 38 of the Texas Civil Practice and Remedies Code.  (*Id.*); *see also supra* n.3.  To reflect this, Sturm subtracted that time from his calculation, leaving a total of 240.2 hours spent on the breach of contract claim.  (Dkt. No. 123 at 3).  The billing records provided show that Sturm's hourly rate was $500 and his legal assistant's was $100, bringing the total fees to $118,620.  (*Id.* at 2); (Dkt. No. 123-1 at 1–5, 9–19).

The Court finds these rates reasonable under Texas law.  Several of the Rule 1.04 factors weigh in favor of granting the fees: (1) this case has stretched over six years and

involved removal to federal court, (Dkt. No. 1), as well as several trips to the Fifth Circuit, (Dkt Nos. 63, 94), (2) Sturm's requested fees and rates are reasonable in light of the customary fee in the Houston area, (3) Nelson's breach of contract claim was successful and he was ultimately awarded $158,321.95 in contractual damages, (Dkt. No. 122), and (4) Sturm's 28 years of employment law experience and his legal assistant's nearly 20 years of experience, (Dkt. No. 123-1 at 1–2).  The remaining factors are neutral.  (*Id.* at 4–5).  The Court therefore awards Nelson the requested $118,620 in attorney's fees.  Nelson also requests statutory court costs totaling $1,329.37.  These costs include filing fees in state and federal court, process service fees, and subpoena fees.  (Dkt. No. 123-1 at 14–15, 19).  The Court finds these fees reasonable under Texas law and awards them as well.

## IV.    CONCLUSION

For these reasons, Nelson's Motion for Attorney's Fees and Costs, (Dkt. No. 123), is **GRANTED**.  The Court **AWARDS** Nelson the following amounts:

1) $118,620 in attorney's fees;

2) $1,329.37 in statutory court costs; and

3) Post-judgment interest at the rate of 3.70%.[3]  (*See* Dkt. No. 122 at 1).

It is SO ORDERED.

---

[3]    Post-judgment interest "is awarded as a matter of course."  *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)); *see also Fairmont Spec. Ins. Co. v. Apodaca*, 234 F.Supp.3d 843, 855 (S.D. Tex. 2017) (awarding post-judgment interest for attorney's fees at the same rate as the final judgment).  Indeed, "district courts do not have the discretion to deny post-judgment interest on monetary judgments."  *Paisano Cap. SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-00852, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (citing *Apodaca*, 234 F.Supp.3d at 855).  The post-judgment interest rate is based upon the applicable federal rate.  *See* 28 U.S.C. § 1961(a).

Signed on March 30, 2026.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**